In the Matter of IRVING KURTZ, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 18, 1991

1

### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

No appearance on behalf of respondent.

### OPINION OF THE COURT

Per Curiam.

Petitioner, the Departmental Disciplinary Committee for the First Department, seeks an order pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) suspending respondent from the practice of law forthwith based upon uncontroverted evidence of misconduct and upon his failure to cooperate with the Committee's investigation into allegations of his professional misconduct.

Respondent, Irving Kurtz, was admitted to the practice of law in New York by the First Judicial Department on February 10, 1975. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

On or about February 7, 1991, respondent was served with a notice and statement of charges. The charges contained eight counts of serious professional misconduct involving respondent's alleged deliberate conversion of clients' funds he held in his escrow account.

On or about February 27, 1991, respondent served an answer to the charges which denied all allegations "upon information and belief".

Thereafter, copies of respondent's 1990 bank records for his escrow account were furnished to the Committee by Sterling National Bank pursuant to a subpoena. These bank records,

consisting of deposit items, checks and monthly statements reveal the following with respect to each of the eight counts charged.

Charge one alleges that respondent converted funds belonging to his client, Joan Heim. On or about January 11, 1990, respondent deposited in his escrow account a settlement check belonging to Heim in the amount of $22,500, raising the balance in the escrow account to $22,518.66. By January 26, 1990, the balance had fallen to $1,393.86. Respondent drained this account by writing checks to himself or for matters unrelated to Heim. For example, copies of the checks indicate that respondent withdrew to himself the amounts of $1,000 and $5,000. Moreover, on January 18, 1990, respondent deposited an additional Heim settlement check totaling $22,500 into his escrow account, together with a cash deposit of $18,000. The bank records show that respondent immediately used this $40,500 total deposit on January 18, 1990 to repay previous overdrafts totaling $37,920.94.

Charge two alleges that respondent converted funds belong to his client, Ernest Loeser. On February 13, 1990, respondent deposited a settlement check belonging to Loeser in his escrow account which totaled $10,000. This deposit raised the balance in the account to $10,042,76. By February 26, 1990, the balance had dropped to $792.26. Three checks were written by respondent to himself totaling $9,250 which resulted in the drop to $792.26.

Charge three alleges that respondent deposited into his escrow account a settlement check totaling $150,000 belonging to his clients Michele and Kathleen Proscia. This deposit raised the balance in the account to $150,867.43. By April 30, 1990, the balance had fallen to $60,119.57. By May 31, 1990, it had fallen to $43,763.36 and by June 25, 1990, the balance had fallen to $1,748.63. The checks written against that account show that from April to June 25, 1990, respondent systematically misappropriated the Proscias' funds. Only one check was issued by respondent to the Proscias and that check for $100,000 was returned for insufficient funds. At the time respondent issued the dishonored check the account stood at $48,787.07 and therefore, the Committee asserts that respondent knew at the time he issued the check that it would be dishonored. The checks written against that account also show that respondent took money to pay settlements to clients entirely unrelated to the Proscias. On April 12, 1990, respondent used Proscia funds to issue a certified check to Heim

totaling $29,535.83 to replace Heim funds which had already been depleted by respondent.

Charge four alleged that on July 13, 1990 respondent received money that was wire transferred from Sun Bank, NA Miami, Florida, totaling $80,000 for the benefit of his client Sandra Dominquez. This money was placed in respondent's escrow account and this deposit raised the escrow account balance to $80,748.63. By July 24, 1990 the balance in said account had dropped to $1,338.67. The documentary evidence indicates that respondent depleted the account by making withdrawals and writing checks payable to himself. For example, on July 14, 1990, respondent wrote a certified check to himself for $50,000.

Charge five alleges that on July 26, 1990, respondent deposited into his escrow account a settlement check belonging to his clients the Rankins totaling $25,000.

Charge six alleges that on August 27, 1990, respondent deposited into his escrow account a settlement check totaling $25,000 belonging to his client Heather Ehlers.

Charge seven alleges that on August 27, 1990, respondent deposited into his escrow account a $4,400 settlement check belonging to his client Andrew Robertson.

Charge eight alleges that on October 9, 1990, respondent deposited into his escrow account a settlement check belonging to his client Angelo DeFingos totaling $10,000.

With respect to charges five through eight, the bank records reflect the same pattern of depletion of money in the escrow account due to respondent's withdrawal of funds for his own use or for matters entirely unrelated to the specific client whose funds were at issue.

With respect to respondent's alleged willful failure to cooperate with the pending disciplinary investigation, the committee asserts as follows.

On June 26, 1990, the Committee received a complaint from Michele Proscia that respondent's check to her had been returned for insufficient funds and that the Proscias had not received any portion of their settlement. By letter dated July 30, 1990, the Committee forwarded the Proscias' complaint to respondent and requested a response. Respondent failed to respond and the Committee sent a second letter dated August 29, 1990, advising him that the Committee would seek judicial relief should he fail to respond.

By letter dated September 12, 1990, respondent requested

an extension of time to respond. By letter dated September 19, 1990, the Committee granted a final extension to September 29, 1990 but respondent failed to respond.

Thereafter, respondent was served personally with a subpoena duces tecum, demanding his appearance for a sworn interview at the Committee's offices on October 17, 1990. Respondent failed to communicate with the Committee prior to October 17, 1990 and then he failed to appear on that date. Staff counsel took a default on the record. Later, during the day, staff counsel received a letter from respondent requesting an adjournment until November because of poor health.

By letter dated November 5, 1990, the Committee advised respondent that his failure to appear on November 13, 1990 would result in the Committee moving to suspend him from the practice of law for his failure to cooperate with the Committee's investigation. Between November 5 and November 13, 1990, respondent did not contact the Committee regarding any further adjournment. On November 13, 1990, respondent failed to appear and on that day staff counsel received another letter from respondent alleging continuing medical problems.

In the meantime, staff counsel had reviewed the bank records pertaining to respondent's escrow account. By letter dated December 6, 1990, staff counsel advised respondent of the results of the investigation into his records and offered him one last opportunity to explain his mishandling, not only of the Proscia funds, but also of the funds of the other clients held by him in escrow. Respondent was directed to appear at the Committee's office for an interview on December 14, 1990.

Between December 6, 1990 and December 14, 1990, respondent did not contact the Committee. On December 14, 1990, respondent failed to appear and staff counsel took a default on the record. Later that day, staff counsel received a telephone message from respondent's secretary that he would give staff counsel "an answer on Monday". Since December 14, 1990, respondent has not contacted the Committee except for the service of his "denial upon information and belief" answer to the formal notice of charges on February 27, 1991.

The petitioner states that to date, respondent has not submitted a response to Proscia's complaint, has failed to answer the Committee's inquiries, failed to appear at scheduled depositions and has continually thwarted the Committee's investigation of these extremely serious complaints. The Committee

asserts that respondent's medical excuses are entirely unacceptable and should be rejected. According to the petitioner during precisely the period of time for which he claims medical disability, he committed the misconduct described in counts five through eight of the charges. The petitioner also asserts that respondent's medical difficulties have not prevented him from being present at his office. Therefore, petitioner seeks an order suspending respondent from the practice of law forthwith and until final determination of the charges against him. Respondent has not responded to this motion.

22 NYCRR 603.4 (e) (1) provides in pertinent part as follows:

"An attorney who is the subject of an investigation, or of charges by the Departmental Disciplinary Committee of professional misconduct * * * may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon:

"(i) the attorney's default in responding to the petition or notice, or the attorney's failure to submit a written answer to pending charges of professional misconduct or to comply with any lawful demand of this court or the Departmental Disciplinary Committee made in connection with any investigation, hearing, or disciplinary proceeding, or

"(iii) other uncontroverted evidence of professional misconduct."

In the case at bar, a formal notice and statement of charges has been filed against respondent alleging eight separate counts of conversion of client's funds totaling approximately $326,000. The uncontroverted evidence submitted by the Committee, consisting of bank records, clearly shows that the clients' funds were depleted for respondent's own personal use. Despite being given numerous opportunities to explain his actions, respondent has chosen not to do so. Respondent has not cooperated with the Committee in its investigation, he has failed to answer the Committee's inquiries, he has failed to comply with a judicial subpoena, he has failed to appear at scheduled depositions and has otherwise continually thwarted the Committee's investigation of extremely serious complaints. In addition, respondent has failed to respond to this motion.

The uncontroverted evidence of serious professional misconduct in combination with respondent's failure to cooperate with the Committee's investigation warrants intervention by

the court for the protection of the public interest. Respondent's conduct "evinces a shocking disregard for the judicial system, and can only be interpreted as a deliberate and willful attempt to impede the Committee's investigation." *(Matter of Gordon,* 142 AD2d 135, 137 [1st Dept 1988]; *see also, Matter of Elkin,* 152 AD2d 213 [1st Dept 1989]; *Matter of Jackson,* 128 AD2d 150 [1st Dept 1987].)

Accordingly, the Committee's motion should be granted and respondent should be suspended from the practice of law forthwith pursuant to 22 NYCRR 603.4 (e) (1) (i) and (iii) and until such time as the disciplinary matters pending before the Committee have been concluded and until further order of this court.

CARRO, J. P., MILONAS, ASCH, KASSAL and RUBIN, JJ., concur.

Motion granted and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York, effective forthwith, until such time as the disciplinary matters pending before the Committee have been concluded, and until the further order of this court.